J. H. & C. K. EAGLE, INC., a Pennsylvania Corporation, Respondent, *v.* HARRY STERNBERG, Appellant.

First Department, January 13, 1922.

Sales — action for goods sold and delivered — defense that goods were defective — evidence — question of fact as to whether buyer notified seller of defects within reasonable time — evidence of difference in market value of goods delivered and contracted for admissible — evidence not within pleadings admissible if not objected to — right of buyer under Personal Property Law to counterclaim for damages in case goods delivered are defective.

Upon the trial of an action to recover a balance due for goods sold and delivered where the defense was that the plaintiff had failed to deliver the merchandise agreed to be delivered, it appeared that the goods were to be delivered during a period of four months, commencing in January, 1920; that during such period defendant became seriously ill and that the defendant's brother conferred with a certain representative of the plaintiff in reference to the shipment of the said goods. The defendant's brother testified, in substance, that the plaintiff's representative said that the defendant might inspect the goods when he returned from the hospital and that the plaintiff would make good anything wrong and would allow exchanges in case of any imperfections. This testimony, however, was denied in respect to allowing exchanges. Deliveries were made at various times and the last lot of goods was delivered on May 3, 1920, and about three weeks later the defendant, having left the hospital, examined the goods and claimed to have found some of them imperfect. On May 28, 1920,

the defendant personally called the attention of one of plaintiff's representatives to the imperfections and on June 4, 1920, the defendant advised the plaintiff by letter that the goods were imperfect and asked plaintiff's representative to call and examine them. Plaintiff replied that it would not have a representative call because the goods had been in defendant's possession for five months or more. It further demanded a payment and the defendant then paid $500 on account. The answer contained no allegation of an extension of time for inspection for any purpose and no allegation that notice of defect was given within a reasonable time, but it was not demurred to nor was any objection made that any of the proof was not within the pleadings. However, when evidence was offered as to the difference in value of the goods contracted for and the goods delivered, under an objection that the evidence was incompetent, the court excluded the evidence, stating that the sickness of the defendant was no excuse for failure to inspect the goods.

*Held*, that a question of fact for the jury was presented as to whether the defendant notified the plaintiff of the defects within a reasonable time, and that evidence of the difference in the market value of the goods as delivered and of the goods contracted for should have been received.

Evidence not within the pleadings becomes evidence in the case if admitted without objection.

Under the Personal Property Law a buyer has the right to counterclaim for his damages arising from defects in the goods delivered, whether or not he has accepted the goods, but he must give notice of the defects to the seller within a reasonable time and so allege in his answer.

APPEAL by the defendant, Harry Sternberg, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 12th day of November, 1920, upon the verdict of a jury rendered by direction of the court, and also from an order denying defendant's motion for a new trial made upon the minutes.

*Morris & Samuel Meyers* [*Samuel Meyers* of counsel]; *Morse S. Hirsch* with him on the brief], for the appellant.

*Bondy & Schloss* [*Eugene L. Bondy* of counsel; *F. Sidney Williams* with him on the brief], for the respondent.

SMITH, J.:

The plaintiff brought an action to recover the sum of $2,705.31, the balance due for goods sold and delivered. The purchase price was $3,705.31, and the defendant had paid $1,000 on account, for which he was given credit. The contract was made upon November 5, 1919, and provided for deliveries January, February, March and April following.

Upon January thirty-first a shipment of merchandise was made, and on March first.   On March eighteenth, the defendant being ill in the hospital, the latter's brother went to the plaintiff's credit department and told Mr. Hebner, who was in charge, that the defendant was still ill of appendicitis and had not been to his place of business and had not examined the goods, and asked him whether arrangement could be made about payment for the goods, because he did not like to pay for the goods before the defendant had actually inspected them.   It appeared that the defendant had been taken ill with appendicitis after the making of the contract, and that the plaintiff was duly notified thereof a few weeks after the first shipment, and had been requested not to make any further shipments until the defendant recovered from his illness, since the defendant was the only one who was able to examine the goods.   The plaintiff's manager, one Barrett, thereupon stated to the defendant's brother that he should accept the goods as they were shipped to him by plaintiff, and that the defendant might examine the goods on his return, and that if the goods were defective they would be exchanged as had been done in the past, adding that the " Eagles are always behind their standard of quality."   The conversation which becomes important in this discussion, as stated by the defendant's brother, is as follows:  " ' Well,' he says, ' if there is anything wrong with the Eagle's goods 684, it is a standard goods, we are always willing and ready to make good; that is, to exchange yard for yard, but you have got to show us your good will and give us some money, if even not all, but give us some money.' " And again, in reciting this conversation with Mr. Barrett, the same witness says: " ' You got to accept the goods according to the contract and whatever is wrong with the goods, any time your brother examines the goods, we will exchange as it has been done in the past.'   He says, '.Eagles are always behind their standard of quality.' "   On or about March eighteenth ninety-five per cent of  these goods had been delivered, and the balance was delivered on May third.   About three weeks thereafter the defendant, having left the hospital, examined the merchandise, and about May twenty-eighth claims to have found the same imperfect in misweaves. It is stated that on May 28, 1920, a little more than

three weeks after the last shipment had been made, the defendant personally called the attention of Hebner, plaintiff's representative, to the fact that several pieces of the merchandise were imperfect. Hebner denied that he had stated to the defendant's brother that he would take them back if imperfect, and on June 4, 1920, the defendant wrote to the plaintiff a letter stating that the goods were imperfect, and asked the plaintiff's representative to call and examine the goods. To this letter the plaintiff replied that it would not have a representative call, because the merchandise had been in the defendant's possession for five months or more. After the letter of June 4, 1920, in response thereto, and upon June fifth, the plaintiff, declining to examine the goods, made a demand for a money payment, and $500 was paid by the defendant upon the merchandise. A prior payment of $500 was made by the defendant on the sixteenth of April. No further sum than the $1,000 was paid by the defendant upon the account, and this action is brought to recover the balance due.

As an answer to the complaint in the action, the defendant denies certain allegations of the complaint, and for a separate defense alleges that the goods were defective and that the defendant had performed all the terms and conditions of the agreement on his part to be performed, and further alleges in paragraph 11: " That the defendant has not accepted said merchandise and has duly notified plaintiff thereof." For a counterclaim the defendant realleges the matters alleged in the separate defense, including the allegation that the defendant had not accepted said merchandise, and demands judgment for $2,752, " by reason of the failure, refusal and neglect of the plaintiff to carry out the terms of its contract." As I read the answer, then, both the separate defense and the counterclaim are based purely upon the failure of the plaintiff to deliver the merchandise agreed to be delivered. There is no allegation in the answer of an extension of time for inspection of the goods for the purpose either of rejection or of recovery upon a breach of warranty or for any other purpose, and no allegation that the notice of the defect was given to the plaintiff within a reasonable time after delivery.

Under the Personal Property Law as it now stands the defendant has a right to counterclaim for his damages for

defective quality of the goods delivered, whether or not he has accepted those goods. (Pers. Prop. Law, § 130, added by Laws of 1911, chap. 571; Williston Sales, § 484.) This is at variance with the common law as construed in New York prior to the enactment of this provision (Williston Sales, § 489), so that the defendant might counterclaim his damage either for breach of the contract to deliver under section 130 of the Personal Property Law or under section 150 (as added by Laws of 1911, chap. 571), giving him his remedy for a breach of warranty. Under section 96 of the Personal Property Law (as added by Laws of 1911, chap. 571) there is an implied warranty that the goods are of merchantable quality. The buyer must, as before stated, give notice within a reasonable time of this defect in quality, and must so allege if he would counterclaim by reason thereof in an action for the price. But the defense or counterclaim based upon these defects was not demurred to, nor was the evidence in proof thereof at any time objected to as not within the pleadings. Proof was made of these conversations wherein the plaintiff's representative told the defendant's brother that the inspection of the goods might be held after the defendant's return from the hospital. This evidence, in the case without objection on the ground that it was not pleaded in the answer would raise a question of fact, in connection with the other circumstances of the case, as to whether the plaintiff had been notified of the defects within a reasonable time. When the evidence was offered, however, as to the difference in value of goods contracted for and of the goods delivered, under an objection that the evidence was incompetent, the court so ruled, stating that the sickness of the defendant was no excuse for failure to inspect the goods. In this I think the court failed to give proper force to the express permission given by the plaintiff that the inspection might be so delayed, and notwithstanding that the answer contained no averment of the giving of notice within a reasonable time, if objection had been made upon that ground, the defendant might have applied for leave to amend his answer. Without objection to the evidence, therefore, because not pleaded, in my judgment a question of fact for the jury was presented as to whether defendant notified

plaintiff of the defects claimed within a reasonable time and the trial judge should have allowed evidence of the difference in the market value of the goods as delivered and of the goods contracted for and should have allowed the difference to have been offset against the plaintiff's claim in this action if the jury should decide with the defendant upon the facts.

The judgment should, therefore, be reversed and a new trial granted, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN, MERRELL and GREENBAUM, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide event.